1-2-5-0-2-8, 1-4-5-9-1-1, Kenneth Henderson v. Tony Mays. Arguments not to exceed 30 minutes per side. Ms. Harwell for appellant. Good afternoon. May it please the Court, I am Amy Harwell, and I, along with Catherine Dix, represent the appellate, Kenneth Henderson, in this matter. I'd like to reserve five minutes of my time for rebuttal, if that's acceptable. All right. Mr. Henderson's counsel failed to conduct a constitutionally adequate mitigation investigation, failing to follow up, as this Court has previously found to be an effective assistance of counsel in Frazier and Halliam, on obvious red flags signaling Mr. Henderson's brain damage, which he sustained when a car hit him when he was riding his bicycle when he was 11 years old. The issues before the Court today center on the meaning and application of Strickland, to facts where counsel failed to do more than a nominal mitigation investigation, but where the state courts nevertheless termed counsel's decisions and advice strategy. I would like to use my time today primarily centering on the first two issues in our brief. We recognize that as to the third issue regarding Mr. Henderson's competency, that this panel is constrained by the holding in Hodges, and we recognize the opinion that was issued today in Carruthers. And so we would rely on our brief as to that third issue, although we would ask this panel to signal to the entire Court that it would be appropriate for the Court en banc to take up the issue and to decide whether the Sixth Circuit will continue to follow the rule of Hodges, or whether it will follow as the 8th, 10th, and 11th have decided, follow a rule that competency determinations are too fundamental to the interest of justice to have procedural bars block their resolution. My plan had been to address first our entitlement to relief under Martinez, and then turn to our entitlement to relief for the ineffective assistance of counsel in advising the plea and the waiver of jury sentencing, but I am glad to address these in whatever order the Court might wish. Counsel, I'm confused by the repeated reference to Martinez. I see references to this issue in the post-conviction appellate brief, and I'm just wondering why no one is talking about... It starts on page 66 of the appellate brief where it says, counsel's failure to provide constitutionally effective representation in developing and making use of mitigation evidence is without question. How is that different from your claim in habeas? The claim that the District Court, and I'm sorry, I don't know where the camera is, so I'm not sure if I'm facing you. Face the judges. There you go. Okay. The claim that the District Court determined to be defaulted was our Eddings Lockett claim regarding the complete picture of Mr. Henderson, which we maintain necessarily involves the presentation of evidence regarding Mr. Henderson's serious brain damage. The post-conviction counsel did nominally raise that claim. They listed it in their claims in their petition, but thereafter completely did not present any proof, did not attempt to prove that claim, and the post-conviction court did not address that claim because it had been defaulted at the post-conviction trial proceeding, was not presented thoroughly in that proceeding. And so the District Court below appropriately determined that as to the claim regarding the complete picture of Mr. Henderson, that claim had been defaulted and applied Martinez to that claim or said that he was. But in essence, following up on Judge White's question, you're really taking a claim and now you're advancing what I would think could be properly characterized as a subset of that by simply saying we have more information about that claim that wasn't presented state post-conviction. Why is that view wrong? Well, as this court knows, the presentation of brain damage proof has been held repeatedly by the Supreme Court to be different in kind from other mitigating evidence. And so where there was no evidence presented in state court at all with regards to Mr. Henderson's brain damage, we would assert that this is a new claim. Okay. So is the issue whether state post-conviction trial counsel blew it or appellate counsel? It is very clearly an issue of state post-conviction trial counsel. There was no proof whatsoever presented regarding Mr. Henderson's brain abnormalities. He has two. One of them is a congenital disorder involving having brain volume that is two standard deviations below the norm. Our experts have opined that was likely true at birth. And then the damage to his parietal lobes bilaterally, which were sustained in the bike accident I mentioned earlier. There was no proof presented in state court regarding the brain damage at all. It is true, as the state pointed out in their sole argument in response to our Martinez claim before this court, that the state appellate lawyer listed the claim that had been pled in the petition in an addendum to the brief, saying in the addendum of the brief, these are the claims that were pled initially at state post-conviction. But because, as the court knows, a claim involves more than just the initial petition having the words in it, it involves also the proof of the claim. Where this proof was never presented in state court, that claim was defaulted at the trial of the post-conviction. And that's what the district court here found. But where I'm still confused is that, as I understand it, one of the state court decisions spent around 16 pages reciting the evidence that addressed arguably these claims, including evidence from psychologists and a psychiatrist. So are you saying that this wasn't presented, or wasn't presented fully, or that because it deals with a brain defect, different rules apply? And that's a compound question. It was a compound question, and I may give a compound answer, in that I think that it may be all of the above, if I may choose all of the above. That is to say, brain damage evidence, and I won't belabor when the court knows very well the William Sears Porter cases, brain damage evidence is different in kind from other mitigating evidence. And what your Honor is, I think, referencing is that in state post-conviction, there was evidence presented regarding Mr. Henderson's serious mental illness. And that was termed by the state court and then by our district court below as being double-edged evidence, because in order to arrive at the appropriate diagnosis, the experts had to know some of Mr. Henderson's other criminal behavior, which obviously would be an interesting calculus for a trial attorney to weigh in deciding whether to put on a mitigating diagnosis, if putting it on necessarily involved, proving up some other very bad behavior. That is not the same calculus at all with regard to brain damage, because though trial counsel should have been aware to investigate brain damage, one, from the fact that the client suffered this bicycle injury that counsel did know about at trial, though they didn't follow up on it, but two, also from these aberrant, bizarre behaviors that prove the mental illness, they should have known to look further. But putting on brain damage proof doesn't have a negative side in the same way, because you don't have to have proof of the prior convictions of unseemly behavior in order to prove that his parietal lobes are broken. You just have to have brain scans and then have a doctor, such as we've submitted to the district court below, who can opine about what those brain scans mean. So I think the answer is the proof is different in kind. It wasn't presented below, and it is more proof than what was presented, although there was mental health proof presented in state post-conviction court. So this is about brain damage or brain deficiency as opposed to bipolar disease? The complete picture of Mr. Henderson, of course, necessarily involves both. There is bipolar disease rampant through his paternal family that was not discovered because trial counsel did not bother to even find out who his father was. Trial counsel instead presented a very altered picture at sentencing, claiming that Mr. Henderson came from an intact family and had no prior history of criminal conduct, clearly showing that trial counsel didn't know who Mr. Henderson was or hadn't investigated at all. What bothers me about this that I'd like you to address is that it seems like the rule that you're advancing by singling this out and narrowing it down to brain injury, and I'm not deprecating the importance of that, but it seems to be an end-run around AEDPA, the deference that we would ordinarily give, and at least part of the objectives of AEDPA and the limiting language in the Supreme Court of Finality, simply by saying something, simply by injecting a brain defect. So I frankly didn't even really understand that was more the laser focus of your case from reading your brief, so I wasn't really looking for a case that not only says brain defect is important, I get that, but that it allows you for us to essentially ignore what happened below. Is there a case that says that? I'm not asking the court to ignore what happened below. There was no brain damage proof presented either at trial or at post-conviction, because of the ineffectiveness of post-conviction counsel. And I believe that that is exactly what Martinez then says is an occasion where we do need to do over. Martinez was a case where there was no evidence, if I remember right. It just wasn't presented. Here there was a lot of evidence presented, just not on this one aspect of IAC. And I understand the court's characterization in that way. However, where the aspect of IAC is something that has been held by this court and others to be one of the most compelling mitigators, if not the. I believe this court actually, in Glenn v. Tate, cited empirical evidence of brain damage being one of the super mitigators, because it has so little downside, and it allows the jury to assess the person's moral capabilities. And I would submit that where there's no proof of brain damage at all, we are in a different category. And do we have a case that says that, or is that simply how you would have us extrapolate or extend Martinez? I am not attempting to extend Martinez. Here we have a situation where the district court found that the claim was defaulted. We were actually in front of this court prior to Martinez being ruled upon. When Martinez was ruled upon, this court appropriately sent the case to the district court for an assessment of the application of Martinez to our previously determined to be defaulted claims, which is when the district court said that that is what the district court did and examined this claim under the Martinez analysis, because he'd previously found it defaulted and not within the purview of anything that was argued in the state court. And so where we have a defaulted claim, where the claim was not presented to the state court, I think we are squarely in Martinez land, and it doesn't require any sort of extension by this court. Counsel, because the district court found the claim to have been defaulted, that means, I take it, that the district court did not evaluate the merits of the claim, and so there's never been a judicial review of the claim to determine if the claim is a substantial claim or an entirely frivolous claim. Is that right? Yes and no. The district court examined the merits of the claim to some extent and found, one, that counsel had performed efficiently. The district court was very clear that the failure to investigate in the ways that I've been describing or alluding to was deficient performance. The district court then found that the claim was not substantial under Martinez, but the district court did so without considering our proof of brain damage. The district court noted that in federal court there was proof of brain damage, but simply said, I have previously found this proof to be excluded under Penholster and cited his pre-Martinez determination of the merits of other claims where we had alluded to this proof. And so the district court did not consider the brain damage proof at all in deciding that our claim was not substantial under Martinez. We don't have any information in reviewing this argument on the Court of Appeals as to whether there's any merit even to the claim to evaluate your argument. I mean, if you were to prevail on the argument, we'd have to send the thing back for evidentiary hearings and all that. Is that what you're asking us to do? It is, Your Honor. We believe that Martinez analysis should be conducted properly in the first instance in the district court, that where we've presented proof of a claim that the district court itself found we had met one of the prongs of the Strickland test, that that in and of itself shows that our claim is substantial under Miller-El, which is, of course, the test for substantiality that's written into Martinez. And so where we've shown that we have one of the two prongs, that shows the claim is substantial. And then beyond that, I have some other arguments about substantiality, namely that the district court said this claim can't be substantial because, and to be clear, he didn't say, while I'm not considering your proof, but his analysis shows he did not consider the proof. But he says the claim couldn't be substantial because the state court found that the proof of Mr. Henderson's mental illness was double-edged. Well, I would submit to the court that if something is double-edged, it has a good side and a bad side. And so that means it has some merit even under that argument of substantiality for the Martinez analysis. Further, the district court granted us a COA on the issue of the substantiality of our Martinez claim, which shows that the district court believed that our claim met the Miller-El standard, since that's the standard for the COA. That is also the same standard for the Martinez analysis of substantiality. So it's clear that our claim is substantial enough to merit the district court's attention. And then we would submit that what needs to happen is that we need to go back to the district court for the analysis of the full claim, which is to say the proof that we've presented for the first time in federal court, and also for us to prove that it was defaulted through the ineffectiveness assistance of post-conviction counsel. How do you reconcile Sears and Penholster? I take it you're relying on Sears, and you should look at the judges. So I take it you're relying on Sears for the proposition that you get to introduce all of this evidence in the habeas proceeding. So how do you reconcile that with Penholster? Well, I believe that Penholster limits federal review of evidence introduced for the first time in federal court when the petitioner has not made it through, proving that something about the state court adjudication violated 2254D. That is to say, when we've not shown that the state court adjudication was contrary to or an unreasonable application of clear precedent, then we don't get to present new proof, and we don't get to present new proof, Penholster says, in order to show that. That determination is made solely on the basis of the state court record. Here, where Martinez applies, where because of the ineffectiveness of post-conviction counsel, the state court did not have the opportunity to evaluate the merits of our claim, Martinez says we're in a whole different field. This is a different place because there's no deference owed to the state court decision because this claim wasn't presented to the state court. So there's no reason to bar particular facts from consideration under Penholster, where these facts were not presented in state court at all, and there wasn't a claim adjudicated in state court to which this court must be deferential. If you want a remand, one of the things that still confuses me about that, we'll put 2254 off to the side for just a second, is I understand that when this went back, you were given the opportunity to conduct discovery, and you didn't. As far as introducing new evidence, as far as I understand it, you just relied upon the Woods and Gur reports and declarations, and when asked what other evidence there would be that you would present, you never stated what else you would present at an evidentiary hearing. So what do you have or what do you think you can find that you would put into the record, assuming we can consider it, if you did get a remand? To be clear, we had submitted the Gur and Woods reports prior to the remand for Martinez analysis because we believed that we would be able to convince the district court that the procedural bars of 2254D should fall away and that the court should consider the merits of our claim with new proof in federal court. And then, as you say, when we went back for the Martinez discussion, we already had the proof of this part of our claim, but we did develop evidence on the remand regarding the ineffective assistance of post-conviction counsel and identified proof and put into the proof in the record declarations of post-conviction counsel identifying that it was because post-conviction counsel was horribly mentally ill herself that though they had Mr. Henderson scanned and had the raw data upon which Drs. Gur and Woods relied, they did not present any of that in state court and that that was because of her inability to function as a lawyer well at that time. That's the proof that we added to the record on the remand and that's the proof that we believe we would need. Obviously, the state would want to cross-examine those witnesses and we would need to flesh out that record in the district court, but that's the proof that would need to be considered in the first instance by the district court judge. So if the evidence was there, had somebody looked for it or looked at what they did have, the absence of which is what you're claiming is the ineffective assistance of counsel, how do you satisfy 2254E2 that seemingly requires that you show that it couldn't have been found or presented? It was not found through any fault of Mr. Henderson's. We believe that where Martinez provides an exception because of the ineffectiveness of counsel at Mr. Henderson's first chance to present the ineffective assistance of trial counsel claim, that under Smith v. Cain from the Fifth Circuit it's clear that our new proof should be considered in that instance. So in other words, there is no bar then in 2254E2 because these are all IAC claims and in every single one of them you're going to be able to say it was of no fault of the petitioner. It was because your lawyer didn't or couldn't do what he was supposed to do. So you've just opened up, it seems to me, this huge hole in 2254E2 that no other court seems to have recognized. I'm sorry, that's not what I meant to do. What I think is in a case such as Mr. Henderson's, where post-conviction counsel made such a wild failure, where brain damage proof they knew to be very compelling and important part of the picture, just like trial counsel, except trial counsel didn't even notice the red flags. Post-conviction counsel noticed the red flags and then failed to follow up on the proof that they obtained and failed to present it. That's a very different situation than most petitioners are going to find themselves in. Obviously, we'll have to prove Strickland both deficiency and prejudice as to both post-conviction counsel and trial counsel. I don't think that's going to be a wide door. I think that's a high hurdle to vault, but I want a chance to do so in the district court because I believe in this case, where we have proof that we presented in the district court, that this default occurred in the state court because post-conviction counsel was so mentally ill she couldn't work, then this is a situation where that proof, just like in Martinez, needs to be heard somewhere sometime. It's pretty interesting you say that she was so mentally ill herself that she couldn't work. There was a significant amount of evidence put in state post-conviction that was taken into account by the judge. You seem to be saying, well, yes, but she put in a lot of stuff, but not brain damage. She put in more stuff, yes, than the trial counsel did. This is a case where trial counsel put on only references to Mr. Henderson's participation in a spelling bee in third grade. And yes, by comparison with trial counsel, post-conviction counsel did some better. However, according to her affidavits, and I realize this is a tiny bit outside the record, but I have deposed her psychiatrist in another case, and that psychiatrist very remarkably said, this woman wasn't qualified to flip burgers, much less practice law. And that's testimony that's been introduced in the Eastern District of Tennessee, in an unrelated but habeas matter where she dropped the ball in that case. This is a very extreme case of missing, I mean, she didn't totally miss the red flag because she got the client brain scans, but then never put that proof on, never gave that information to her experts. And so where this is such compelling mitigation with no downside in terms of being presented, there could be no strategy behind that, and that is a result of a very unusual situation, but that, yes, is ineffective assistance of counsel. All right, I see that the red light is on. I'll reserve the rest of my time. May it please the court, John Bledsoe on behalf of the respondent. I believe my argument before the court will be fairly brief. I was prepared to address the underlying deference that should apply to the claim as it was raised in the state court. Regarding the Martinez issue that has been raised, our position is that this is subsumed within the exhausted claim of ineffective assistance in regard to advice given surrounding the petitioner's decision to plead guilty to first degree murder and the other charges and to waive the right to a jury trial in the sentencing. This, in effect, is a claim that that claim wasn't sufficiently proven. There is additional evidence that has been discovered afterward, and that should be considered. This court in the Abdur Rahman case looked to whether Martinez applied when you have a claim that is not procedurally defaulted. It is exhausted on the merits, but the petitioner objects at the federal habeas level to the amount of evidence put on the way it was argued and presented. And what this court concluded is that the first step in a Martinez inquiry is whether the claim is procedurally defaulted. You don't go further if it's not procedurally defaulted. So our position on the unique subset claim regarding the brain damage evidence, whether counsel should have found that, how that should have factored into advice given at the time of the plea and the waiver of the right to jury trial, is all a subset of that right to the effective assistance of counsel in the plea process and in the decision whether or not to waive the right. Well, you know the guilty plea obviously takes place prior to the state post-conviction proceedings. So isn't your argument somewhat contrary to the requirements of Martinez? I would agree that this proof can be presented in the state court in the post-conviction proceedings to support a claim of ineffective assistance at the time, which was not done. But yes, this is proof that could have been presented and wasn't. You just don't create a procedural default based upon the later arising evidence that could have been discovered before and was not presented. So our position on Martinez is actually quite succinct. You just don't get past that first factor. This is all part of the claim that was squarely raised. Now, I agree this court may review under the deference of Section 2254D the proof presented up to that time and an inquiry then into the reasonableness of the state court's decision under the proof developed in the post-conviction because there was additional proof developed at that time. And we've addressed that in the brief and I'm not going to go too far into that since counsel didn't get into it unless the court would like. But in terms of Martinez and the specific unique claim that's being addressed today in oral argument and regarding the district court's inquiry, we disagree that that merits further inquiry because that is subsumed within the claim of ineffective assistance of counsel in the plea process. It's actually interesting if you look early in the litigation of this case prior to Martinez, there was a dispute among the parties as to what certain claims, not necessarily the claim addressed by counsel today, but what claims are fit in that. Prior to Martinez, the position of the parties was different. The petitioner was arguing that certain claims were included and not procedurally defaulted. The state argued to the contrary. With Martinez, the trial strategy in habeas cases has sort of changed in that regard and there is an incentive for petitioners to parse a claim further down into subclaims, which they're certainly free to do, but this court looks to the actual legal claim, the Sixth Amendment right to the effective assistance of counsel. The right, the deprivation is whether there was a deprivation of the right in the plea process and in the decision to waive the sentencing hearing. Judge Anderson found that this was procedurally defaulted, did he not? He found something was procedurally defaulted. He did because he addressed it as he found it as a separate claim. I disagree with that. Basically, this comes down to how you define the claim. You define it the way you did. It was presented. It was ruled upon. You define it the way, apparently, the district judge and your fellow counsel is defining it. Then it's a separate claim, i.e. brain damage claim, as opposed to slicing and dicing the broader IAC claim. Yeah, well, it's still IAC in order to fit under Martinez, but it is an effective assistance of counsel in another way. I mean, that's how I understand their argument. My point is it's not – you should not parse it that way because it's the one right to the effective assistance of counsel, which involves an inquiry of what counsel should have done, what he was reasonably expected to discover, what was he not constitutionally compelled to know before. I mean, there are lots of factors that fit under that broad claim. When you parse it down, it kind of – you lose focus of the claim as the Sixth Amendment right to counsel in that plea process. These are my words, not Ms. Harwell's words. But in essence, I think she was saying brain damage is a separate claim. It's almost a standalone claim. It's not subsumed and thereby included in the broader claim. What's your response to that? Well, if it's not couched in terms of ineffective assistance of counsel, then under Martinez and Davila, it's not subject to Martinez analysis anyway. If it is shown or presented as a freestanding constitutional reprobation of some way other than ineffective assistance of trial of counsel. I think it has to be that. Let me change the question slightly, Ben. I think she can tell me if I'm wrong that she's arguing that IAC brain damage claims are somehow different or treated differently because of the potential significance of brain damage. And, Your Honor, I'm aware of no authority that says that. That actually strikes me as analogous to the competency claim, the argument raised under competency that competency is different and cannot be subject to brain damage. And this Court has already held in Hodges and then applied today in the Carothers decision that competency is not different. Martinez does not apply it because it's not ineffective assistance of counsel. So I'm aware of no authority that treats a freestanding brain damage claim differently. It would have to be a claim of ineffective assistance of counsel in order to fit under Martinez to secure further proceedings under that. Our position is that it's not that. It is subsumed within the claim that was raised and exhausted in state court. And this Court's review of that resolution is tied to how the Court of Criminal Appeals in the post-conviction appeal resolved it under the evidence that was presented to it at that time. Counsel, are you saying all IAC claims are unitary? That once you raise an IAC claim in post-conviction proceedings, it doesn't matter? The nature of the claim, it doesn't matter how restricted it is? It covers every conceivable IAC claim? No, Your Honor. I'm tying that and tethering that specifically to when there has been a guilty plea. That when you have a guilty plea, the inquiry is the knowingness and voluntariness of the plea. So there's a viable claim of ineffective assistance in some way that undermines the knowingness or voluntariness of the plea. That itself is one claim. There's not multiple subparts of how counsel might have specifically provided deficient performance in the plea process. It's unique here because it's a plea issue, and you're dealing with the advice given at the time of the plea. But counsel, it seems, as Judge Clay alluded to, there's a vast expanse between knowing, giving ineffective assistance of counsel in advising the plaintiff, and then that he plead guilty or that he waive a jury, and the representation provided at the sentencing proceeding. I mean, one can be completely effective in the first instance and still blow it in the mitigation proceeding. Well, Your Honor, I don't dispute that there could be a separate allegation of ineffective assistance of counsel in what actually happened in the sentencing hearing, the bench trial. But that's not the issue on which the spiffing of pillability was granted and we're looking at. It's the conduct of counsel in that moment when the decision was made to plea. Yes, there can be separate claims regarding counsel's conduct during that hearing, the evidence presented, things of that nature. That's a separate inquiry into whether there was ineffective assistance at the time advice was given regarding the plea and whether to waive the right to jury trial. Now I'm really confused because there are four issues for which a certificate was issued. The district court granted it for two. We added two more. One that we added was IAC of trial counsel advising Henderson to plead guilty. That's basically what Judge White is asking about. The first issue that the district court certified was IAC of trial counsel in preparing for sentencing. Those seem to me to be – maybe they're related, maybe they're not, but they are separate issues. As Judge White said, you can be effective in connection with whether you should plead guilty and horribly ineffective in connection with sentencing in a death case. Yes, Your Honor, and I believe how that came out – well, first of all, Claim 9 has multiple subparts. That was a broad claim. When we get to the briefing, our review of the principle brief by the appellant was that their argument at the time of briefing was limited to 9A. And that was the sentencing component of the decision to plead guilty. So that is how we briefed the case. That's how we addressed it. And in terms of the Martinez argument, it was not defaulted, so Martinez doesn't apply. You may have the numbers wrong. I thought that what we're talking about here is the 9N claim. Well, yes, Your Honor, but our position is that is subsumed in the decision. I may be misunderstanding from the briefing and how the claims are raised. Obviously the briefing lays out what it is and the court will look at it. But our understanding of the way the claim was raised and litigated is that we're looking to the claim regarding ineffective assistance of counsel in the guilty plea. Unless the court has further questions, we ask the court to affirm. All right. We briefed the claims as we did, Your Honors, because the merits of these claims are so intertwined. One cannot, although I think the state tries to, artificially divorce the advice counsel gave to Mr. Henderson to plead guilty from counsel's failure to investigate the case. The proof in this case, and I admit the state caught that I cited in our 2254D analysis Mr. Mosher's declaration. The fact of the matter is Mr. Mosher said the same thing in state court that he said in our declaration. And I provide the court with that citation. It's at R23-2, page ID 2566 to 2572. When he testified that essentially the primary consideration in deciding to tell Mr. Henderson to plead guilty was that they had no mitigation and they thought they knew, they'd heard a courthouse rumor that Judge Blackwood was against the death penalty. So what we have is a case where counsel failed to investigate, failed to do their job, and advised the client to plead guilty because counsel just wanted to get it over with and get it over with quickly. Another way to look at that is he pled guilty, it seems to me largely knowingly, because there was no defense to guilt. There may be a lot of argument about the extent of mitigation evidence that may or may not have outweighed the aggravators, but what was the defense to his guilt other than potentially competence? Where I agree with the court is that counsel did not know there was a defense to his guilt. But where Mr. Henderson has brain damage that affects his ability to weigh and deliberate and where he was charged with first-degree murder, counsel at least had an obligation to look into the brain damage and to allow Mr. Henderson to make the decision whether to plead guilty or not, knowing that he had a defense to first-degree murder in the form of his inability to weigh and deliberate that might have convinced one juror or more than one juror to not vote for first degree and certainly would have begun putting in his mitigation story in the first phase of the trial. I think the court's aware that the ABA guidelines say that a plea is to be avoided in a capital case at all costs when there's not an exchange for a life sentence for this very reason, because counsel has a duty to always begin telling the story for life, whether it starts in the first phase and continues through the penalty phase. You're essentially saying that that can't be a question of trial strategy, where at least arguably the strategy here, good or bad, was that you can generate a mitigator by accepting responsibility and pleading guilty, and it appears as if the state judge actually counted it as a mitigator. The state judge absolutely did not. If the court checks the Rule 12, the state judge found there were no mitigating circumstances. And however, that is where the heart of our 2254D analysis is, Your Honor, because under Strickland, as the court's well aware, there cannot be a strategy decision in the absence of a competent investigation of the facts. So here, I agree, the state court did term this a strategy decision, but that is an unreasonable application of Strickland, where the state court knew and acknowledged in their opinion that counsel had not done the investigation. As the court's aware in Sears, the Supreme Court clarified that there can be strategies that in the abstract appear reasonable, but that where counsel doesn't really know what's going on are not in fact a strategy decision at all. And though Sears postdated our case, that was clearly an explication of the clearly established law of Strickland, which did predate the Court of Criminal Appeals finding in this case. So that's our argument for why the entirety of Mr. Henderson's claims should be reviewed on the merits. The state is right that at some points we argued that the brain damage evidence should be considered in the district court, and the fact of the matter is, Mr. Henderson should get one chance for a court to review this evidence. As the court said in Martinez, these claims are too important for ineffective assistance of counsel to cause the default at the initial stage and at the post-conviction, and for a petitioner to never have a chance to present his proof. And we're asking the court for that one chance. Let me ask you something here. What was the information available to counsel prior to the submission of the guilty plea that should have alerted counsel that there might have been an issue of brain damage, and that's something that counsel should have looked into? I know there was an examination by this forensic psychologist, Dr. Lynn Zager, but that examination seemed to address psychological issues, associative disorder and antisocial traits and things like that, but not necessarily brain damage. What was there that should have made counsel know that that was an issue way back then? Just to follow up on what you just said there at the end, to clarify, prior to the plea, Dr. Zager only assessed Mr. Henderson for competency. It was a three-hour interview where she made sure he knew who the parties were, that sort of very quick analysis of competency. What counsel had prior to the plea, first and foremost, was the information about Mr. Henderson's brain injury at age 11, which is what we now know caused the deformity of his parietal lobes, which are atrophied. Counsel should have followed up on that. There was no indication that was a continuing injury or anything. That's just a childhood normal injury. There was more than that, yes, sir. The more than that, Your Honor, is the prior crimes that Mr. Henderson had committed that counsel was unaware of, and much like counsel in Rompilla didn't bother to investigate or find out about, Mr. Henderson was actually also had pending charges of very aberrant and bizarre behavior, which Dr. Zager says, if I had known about those charges, I would have advised counsel we needed a neurological consult. So that is to say. What behavior was that, if I could ask? It's very unseemly. He had kidnapped and raped his girlfriend's mother. He had broken into the home of the school secretary who knew him quite well. He had broken into the home of an art teacher who was the mother of one of his best friends. That is to say they were escalating crimes of violence that showed very. Criminal activity doesn't indicate necessarily brain damage of any kind, does it? Dr. Zager said that in combination with her knowledge of the bike injury, had she been told about that prior to the plea, she would have told counsel there needed to be a neurological consult. So that is to say counsel had the bike injury. If he had investigated, even known what his client was charged with in the same courthouse at the same time this proceeding was going on, provided that information to the psychologist that the state was paying for to help him, then this brain damage would have been discovered. That is Dr. Zager's testimony at post-conviction. Is it going too far to characterize your position then as saying that in one of these cases, particularly a death case, that if somebody has some unexplained criminal behavior and you know they fell off their bike or were hit by a car or whatever, then to be competent, you have to have a brain scan and hire a neurologist? No, sir. I think that to be competent... So what distinguishes this case from your answering no? I think to be competent, Mr. Moser would have had to perform reasonable investigation. And the proof that we have put before the court is that had he done minimal things, it would have led to the discovery of this proof. I'm back to just following up on Judge Clay's question, which I thought was a good one. There doesn't seem to be anything that came out in counsel's interreactions with this fellow that suggested that he had or was currently suffering from brain damage. Well, counsel interacted with this fellow exactly three times for very, very short periods of time in the nine months preceding his death. So counsel had very little with which to assess that. But that begs the question. In however much time he did have with him, there's no suggestion that he exhibited behavior that was suggestive of brain damage, correct? I can't answer that because counsel Moser was very clear at the post-conviction proceeding that he, I think he said, I'm a psychological layman. I don't know anything about these things. I would not recognize these symptoms. You've answered it by saying you don't know. I'm saying that Mr. Moser says he wouldn't know. We also have these five letters that he wrote his counsel that are really quite extraordinary compared to the letters that we normally see, and I'm sure you do as well, written by defendants, that suggested this was a reasonably well-educated, articulate young man. Which obviously belies his real condition. So I'm just trying to figure out what were the triggers that indicated that a brain scan should have been anticipated and undertaken earlier? And you've answered it, as I understand it, by saying, well, he had some bizarre crimes, and there was evidence that he had been in a car accident. So is that it? I believe that the incredibly aberrant nature of those crimes cannot be overstated. I mean, this isn't a case where it's just someone doing something foolhardy or unwise. The circumstances of those cases, which, as Mr. Henderson's advocate, I'm sort of loath to regale the court with how bizarre they were. We've read it. We understand it's bizarre. But, I mean, it involved living in the car. Well, no. Mr. Henderson's social history, I'm glad you asked, because now I'm remembering. Mr. Henderson's social history, the counsel also failed to develop or investigate, involved things like living in closets when he had a perfectly nice home to live in, hiding under people's beds for weeks and staying there. There was very bizarre behavior, separate and apart from the criminal activity, that had counsel investigated just where his client was living, it would have tipped counsel off that they needed to go further. And I guess in the second part of what... So by definition, you're saying that should have led them to the question of brain damage as opposed to the bipolar diagnosis that was obtained. I think that whenever counsel has an indication that a client is mentally ill, they need to look into that. And if they have an indication the client has brain damage, they also need to investigate that. And what the proof was at post-conviction was that the expert that they hired, that they were relying on, said, had I known about the aberrant behavior, I knew about the head injury, I would have said there needed to be a neurological consult. And if there'd been a neurological consult, we wouldn't be here, Your Honors.